Good morning, Your Honor. It's William Gillespie on behalf of plaintiffs and appellants. 15 minutes, as long as it is, is rather short to compress everything that I would like to say, Your Honor, so I will, if I can, concentrate on some highlights. You'll have even less time after we ask a few questions. I'm sorry to say. And even less time if you keep talking about the time. Oh, well, then let me get started then. Or we'll extend your time a few minutes, hopefully. Well, thank you very much, Your Honor. This case was tailor-made for Section 1988. This court itself found that as a result of plaintiff's lawsuit, the city repealed all of its unconstitutional sound ordinances. We don't make findings. We stated it. Yes, it is stated. I'm sorry then, Your Honor, but that's at the page 24. But the highlights of what we believe to be the district court's errors. And I'd like the court, as I go through this, to please bear in mind that the city's burden to prove special circumstances, it was their burden. And the burden was a heavy one. So that's sort of the backdrop of this. Does Farrar apply to this kind of case? I don't believe it does, Your Honor. In fact, what does? If I don't apply for Farrar, what legal standard do I apply? What test do I use to determine whether fees are appropriate, and if so, the amount? That's really, as I glean the question, what are the special circumstance tests involved here? Well, for example... Go ahead. I can entertain the court's question. No, go ahead. Of course you could, if I asked you. Well, the Vasquez case, for example, it's a 2013 case in the circuit. Judge Brizon, as a matter of fact, authored that. And he gave the two steps. First of all, do the fees vindicate Section 1988 and its policies? And then the second point is, do the equities favor the fee applicants? Or not favor them, for that matter. So no, Farrar is not the only test. It seems to me the hard question here. I mean, in order to... You need to rely quite heavily on the fact that... I understand you have this argument that because you didn't ask for the compensatory damages, it doesn't matter that you didn't get them. But aside from that, you spend a lot of time relying on the changes that were brought about during the course of this litigation in the city ordinances, right? And what I'm concerned about, and I know there's some support for this, but how this interacts with the Buchanan problem of, you know, which is a very difficult standard because it seems to say ordinarily when that happens, you don't get credit for it in the fees. But there is some case law that seems to say that if you get nominal damages, if you get other reliefs, then maybe you do get credit for it in the fees. Is that basically the difference? Yes, and that's my understanding, Your Honor. In fact, the Benton case versus Oregon Student Assistant Commission seems to say that. In other words, and I think it distinguished Buchanan by saying you don't need to get a judgment, for example, for an injunction or DEC relief, but if some change is brought about by the case itself, whether it's formally seen as a judgment or whether it just happened as a result of the case, then that counts and Buchanan was... In other words, because you did secure a judgment on the merits in your favor and are a prevailing party, therefore, in looking at... and I don't know why you just don't run this through the so-called O'Connor factors and say Farrar does apply, but it's the O'Connor factors. Why do we have to say Farrar doesn't apply? Because that's the... Your Honor, the reason I did is that seems to be, if you will, the seminal case for special circumstances. Which does? Farrar. All right. So when Judge Zahari asked you whether Farrar applies, you said no, but you don't really mean that. You mean it does apply, but it favors you. We... No, what we do... I don't believe it does apply. I think there was a threshold test in Farrar and it went like this, and Judge Justice O'Connor's rather pithy language, somebody seeks a bundle and gets a pittance. That seems to be a threshold test, and if that's not... if you can't say yes-yes to that initial threshold question, then Farrar doesn't apply. And I'd say this circuit said the same thing in the Stivers case, if I may. I can quote it, but the court probably knows it. May I quote it? Go ahead. Yes. I'm now quoting from Stivers versus Pierce 1995 case. Farrar's holding is limited to cases in which the plaintiff seeks substantial monetary damages, but obtains only a nominal award. Close quote. So that's the principle, and yes, there are other parts of the O'Connor test, and I'm prepared to speak to them. I'm saying right out of the gate, this... it should not have been a special circumstance case, at least based on Farrar. That was my point there. So, in other words, we didn't pass the threshold test because we didn't seek a bundle. We only sought a bundle. It's somewhat illogical, though, that if you got the same one dollar, you should be better off because you didn't ask for more. I mean, one logic in that would be, but therefore nobody had to spend time litigating about the more, so there wasn't a whole bunch of wasted litigation. That is true, and that's... I hadn't thought of that point, Your Honor, but that's... that's a valid point. But I don't know that that changes the threshold, and the reason I say that is because the language in Farrar, without belaboring it, is constantly seek, obtain, seek, obtain. So seek must be pretty important. It appears at least ten times in the case. Well, it's also important whether you prevailed or not is secondary, because really, Farrar says you can prevail and still be the loser. You look at who... who won and who lost, who obtained what they sought. Here, one could argue, you obtained three of your four goals, right? Yes. And three dollars. Well, and maybe more, because our... one of our points, and I don't want to concede it was just three, the reason I say that, we believe we should be given credit for the repeal of this... of the ordinances. And those... those... those... although those were not reduced to judgment, I believe we should get credit. But that's something perhaps for the trial court... The catalyst theory? Oh my goodness. Is that what you're arguing? No, it's not, and in fact, if I may, Your Honor, in the case of Farrar, wait a minute, the plaintiff is... is claiming that something was changed because of the litigation, not in a judgment, but it caused some changes, and Justice Rhodes said, no, that is different. The catalyst theory is one thing, where that only applies when a plaintiff does not get judgment. In the Benton case, she did get judgment, but then she was... I don't know that she argued that the change was there, but the... the judge commented on it in any case and said, no, they are different. They're distinct from the catalyst case. In other words, we're not reviving the catalyst theory, which has been knocked out because of Buchanan. He said, this is a different inquiry. It seems... But counsel... counsel's just fooled with... I'd like to interject a question, if I may. Oh, please do. Is there any circuit court outside the Ninth Circuit that's addressed the not sought, but nominal damages were given and there was... was there an award under... under the statute? Thank you for that question, Judge Gold. I believe there is, and in fact, this was a case that we put in one of our letter briefs that we submitted. We had two letter briefs. This was one of them, dated March 26, 2015. The case was from the Fifth Circuit. The title of it, Sanchez versus City of Austin, site was 774 F 3rd 873. And I can quote that case, actually, at 882 and 883. It says, here, by contrast, the appellant sued for declaratory and injunctive relief and only nominal damages. Thus, Farrar does not control. Okay, so basically, you'd like us to follow the Fifth Circuit rule and is there any circuit that's gone the other way? I am not aware of a case that has gone the other way, Your Honor. I have not looked in every circuit. I did as much research as I can, but I'm not aware of one. I'm not aware of a case that went the other way. Okay, well, thank you for responding on those questions. Thank you very much, Judge Gould. If I may continue. Actually, the court caught my first point that the district court wrongly invoked Farrar because we didn't meet the threshold test. And the second is that it seemed to expand Farrar, try to expand they don't have the proof for actual compensatory damages, versus the plaintiffs that don't claim it because they just either don't have the proof, they don't want to, they want to, I guess, take advantage of some doctrine. But the point is that in Farrar, it only talked about people claiming compensatory damages. And to expand that, I don't think that's in sync with the and the case I would cite for that is Vasquez versus Rakowkis. Ninth Circuit case 2013, I mentioned it before that again, Justice, or Judge Bazan authored that opinion. Which case you're talking about now? It is Vasquez versus Rakowkis. And I apologize if I'm messing up the defendant's name. I probably am. I think it's Lithuanian. My co-counsel eliminated that long story. He called it Vasquez versus Gustafson. He thought it was a Freudian slip. He didn't want to name a Lithuanian as a defendant, so I do not know that. But if I may, a short quote, a court's discretion to deny fees under 1988 is very narrow, and the fee award should be the rule rather than the exception. The defendant has a burden of showing that special circumstances warrant a denial of fees, and the defendant showing must be a strong one. So the expansion, by saying that people who seek nominal damages, there are two different classes. Some that seek nominal, just because they want to make a point, and not just make a point, but also get their constitutional rights vindicated. And those that seek nominals because they know they don't have proof or they don't have real damages. I say real, but compensatory damages. So why aren't we focusing on the real issue here, which is not the money, but the actual relief sought and obtained? I can go to that right now, Your Honor. Yeah, sure. And that was actually my third point. The court, apparently reading my mind here, the district court wrongly found that there was no public interest that was vindicated here. And I don't understand how it got there, but it used Benton quite a bit. The public interest that was vindicated was that these amplified political speech ordinances that were found to be unconstitutional were repealed by... Your opponent's going to say, because she said in her briefs, that this was all sort of technical and silly because, in fact, these ordinances hadn't in essence already been overwritten anyway. So what about that? Well, if you look at the chronology and the record, where the city... I understand they were on the books, but her claim is that they weren't operative, as I understand it. Well, they were operative, Your Honor, and the reason I say that is because Mr. Klein applied to the city for a permit to use amplified... And they said you don't need a permit, I thought. Oh, no, no. They said, no, we don't actually know. The city manager... And, in fact, this is in ER 64. The city manager wrote a letter back and said, no, you don't get a permit. In fact, I don't grant permits to anybody, and it might interest you to know that I just denied a permit to a large group that was opposing Proposition 8 way back in 2008. So he was denied that permit. So how substantial is this right that was vindicated in this case when we're talking about the use of a bullhorn or not? I mean, when we think about the importance of constitutional rights and free speech, where does this fall on the spectrum? Well, Your Honor, that's... Yes, it's... First of all, it's First Amendment. We all know it's under that rubric and under that umbrella. But the key case is actually way back in 1948-49, in the Seya v. New York case, the court is probably familiar with, and that was played a part earlier in the case for us to get this... the judgment on the merits. But I did say that amplified political speech, or amplified speech, comes within the First Amendment. It gave many grounds... I know that, but tell me how this compares to other free speech rights and other free speech cases with respect to its importance and how it's going to apply to the public at large and etc. Well, now it... before amplified political speech was illegal in Laguna Beach. Because of the case, it is now legal. So all comers are welcome to use amplified political speech in Laguna Beach. It could be the opponents from Proposition 8. It can be Mr. Klein and his people. It can be anyone in the world. So that's... that is important. The idea of amplified political speech, just as an entity, that's been vindicated here. And how it would compare... And it's worth a million dollars in attorney fees? As long as this case goes on, Your Honor, we do keep time. We do keep time. Okay, you're almost out of time. If you want to save any time, you should do it. If I can save some time, Your Honor. Thank you very much for the court's attention. I'll give you a minute. Thank you. Good morning. May it please the court. The briefs and appellant's arguments this morning have made clear that when it comes to entitlement to attorney's fees under federal law, Section 1988, what's before this court is plaintiff's attempt to take a second bite at the apple, when this court is really obligated to defer to the well-reasoned and thorough analysis of the district court. That's not true as to legal analysis. I mean, it's true generally as to amounts of fees, for example. But why do we have to defer to it as legal analysis? Well, and I am going to get to that in the sense that what the district... it is correct that when it comes to the standard applied, the legal test applied, that that is subject to de novo review. But when it comes to the actual application of that test to the facts here... But, I mean, first of all, that means that the question of whether a Farrar applies to this at all is certainly a legal question, right? Correct. Second of all, when he was applying the so-called O'Connor standards, he seemed to completely insist that the changes in the law during the period the litigation was pending was totally irrelevant. That seems to me to be a legal question. So I'm not sure what it is that... and those seem to be the two key questions. So what is it that we're supposed to be deferring to? Well, as to the applicability of Farrar, this court has adopted the O'Connor factors. In a case where a plaintiff seeks or prevails in obtaining nominal damages, Farrar instructs that because the question here... let me take a step back. Hensley applies a two-step test to a determination of whether fees are recoverable under Section 1988. The first step is, is the plaintiff a prevailing party? We don't have that issue here. The district court recognized that based on receipt of nominal damages on the particular issue on which the plaintiff prevailed, that they were a prevailing party. So the issue here is what amount of fees are reasonable? And what Farrar instructs is when a plaintiff obtains just nominal damages... ... In other words, there's a legal... as I understand it, the 5th Circuit has held that that isn't the question. Because the question is what was he seeking and what did he get not what did he get. Well, that is one component of the analysis under the Farrar factors. That's the first factor as to what was sought versus what was obtained. Then there are additional factors as to what the particular public goal was that was achieved, whether there was a public goal achieved by the litigation, and then the significance... The first issue, as I understand it, is are we in the Farrar world at all? Correct. Or are we not in the Farrar world, but just ordinary... Or is Farrar even a special rule, which isn't clear either, but assuming Farrar is a special rule, for a circumstance in which you are seeking substantial compensatory damages and instead get nominal damages, the argument, the legal argument is that it doesn't have anything to do with this case because he was never seeking compensatory damages or minor peripheral compensatory damages. And I respectfully disagree with the statement that it doesn't apply in this case. Your position is it does apply? I know, but I want to know why. You just keep saying it applies, but you haven't told me why. I'm getting there, if you will. If we look at Farrar, what Farrar was looking at in determining whether or not, what amount of fees were reasonable in the case, is it was looking at whether or not the achievement or the success, if you will, of the plaintiffs was technical or de minimis in nature, such that the only... The only reasonable fees is no fees at all. But in that case, and I'm sorry to interrupt, focusing on the first factor, as I understand that first factor of Farrar, I interpret it to be talking about money. The case says you talk about the amount sought and the amount obtained, and Farrar, it was easy. They got one dollar, they were looking for millions. They may have been the, quote, prevailing party, but they didn't really win the case. Which leads me to believe Farrar is talking about cases seeking money damages, not necessarily this case where plaintiff... The nominal damages were not the driving force. The driving force was a change in the law. And so help me out with Farrar. Does it really apply to a case like this as we struggle to find out who really won this case when really money is not the issue in this case? Yes, it does apply, and I think there's a couple of factual things to clarify here. While the appellant states that the only thing that they ever sought was nominal damages when it comes to money, that's not the case. The record is clear that they sought statutory damages under the Baymax... For a peripheral thing, that's not the center of the case. The center of the case was the First Amendment issue and the validity of these ordinances. And it wasn't much money anyway they were seeking, but it's really a side issue. Well, but when you are looking at what was sought versus what was achieved in terms of a dollar amount, that is relevant. And we do cite cases in our brief where even a small $25,000 was sought, not in money damages, but statutory damages. And that was held to be a factor that actually went against any award of attorney's fees in those cases. And they were not even statutory damages anyway, they were just another form of nominal damages, essentially. Statutory damages, right? Well, statutory damages are very... Statutory damages, I think, are very different than nominal damages, and that was recognized by the plaintiffs because with respect to the Bain Act, they did actually seek both statutory and nominal damages if you look at their First Amendment complaints. So even they recognize that those are different. So they lost on the state claims, they won on the federal claims. A district judge can evaluate what claims the plaintiff succeeded on, what claims the plaintiff was unsuccessful in determining what's a reasonable fee, while recognizing there was some success by the plaintiffs here. Correct, and I think the district court did just that. The district court did not deny that the plaintiffs did have some success, but it looked, again, at the overarching question that Farrar instructs us to look at, is whether or not the litigation was technical or de minimis, such that the only reasonable fee is no fee at all. And in this case it was, and the district court properly relied, in looking at what this case achieved,  in Benton there was a challenge to state law, and while the case was pending, that state law was amended. And that decision ended up, although the plaintiffs sought attorney's fees and claimed that they should be credited with that legislative change, the court declined to do so. Excuse me, didn't this court previously essentially recognize that the change in the laws was brought about by this litigation? There was a statement in the prior panel's decision on the motions for, the cross motions for summary judgment, those appeals, that the city did amend, did voluntarily amend the ordinances, and it did say, as a result of this lawsuit. But I would say that that was nothing more than a recognition that there was a temporal... Counsel, why isn't that the law of the case, so far as that issue goes? Well, actually, if you look, Your Honor, at the same memorandum opinion, the panels expressly stated that it expressly declined to make any statement as to whether or not the plaintiffs were entitled to fees under this statute. That's not the case. Leaving that for the district court to decide in the first instance. Okay, but that still doesn't answer his question. That's normal. But why isn't it still the law of the case in terms of how we look at the issues now? That is, the prior Ninth Circuit panel said that the plaintiffs achieved something in change of the law. So don't we have to look at that in terms of... We have to accept that when we assess fees. That was a statement that was made, but it was never actually a matter that was before the court for determination. There was no evidence that was presented as to what was or wasn't done. That evidence ultimately became... The district court didn't seem to... He didn't say it wasn't true. He just said it wasn't relevant. Well, what the district court indicated is that it's not that it wasn't relevant. It failed to... Just like this court declined to credit the plaintiffs in Benton with the statutory change that was made that followed the filing of the lawsuit, the district court declined to credit that change to the appellants. If you look in the record, I believe it's at Supplemental Excerpt of Record, page 109, there are communications between my colleague, the city attorney, and Appellants Council, in which it was indicated that the city voluntarily, unilaterally, and without expectation of any action by the appellants, at multiple times amended the ordinances to conserve... Voluntarily meaning not under court order, but... Parties take actions all the time in litigation to conserve resources and to both of the parties, council, and the courts. Right, and therefore you're saying it was because of the litigation. From a temporal aspect, had the plaintiffs never sued... What do you mean by to conserve resources? You mean so you won't have to defend it in court? To resolve the issues of the litigation. Right, so therefore it was directly as a consequence of the litigation. I.e., if the litigation had occurred, it wouldn't have happened. From a temporal aspect, but... Not from a temporal aspect. It's because of litigation, in order not to... What you're saying is, in order not to have to defend this and be bothered with it, they changed the law. Whether they changed the... That is an important concept. If it was done because of a threat of defeat, or whether it was done more of... To, if you will, to get rid of the nuisance of the lawsuit. And not really to the merits of... Counsel Judge Gould, I'd like to interject a question before all your time is gone. Do you agree with your colleague on the other side of the case, as to the statement he made about the 5th Circuit case, which held that, in the quote he gave us, that FAR doesn't apply when someone doesn't seek compensatory damages. And if you don't agree, why? And if you do agree that that's what the 5th Circuit said, are you asking us to create a 9th Circuit rule that would be in a split with the 5th Circuit? In other words, can you distinguish Sanchez? I think that what was before the court, again, in Sanchez, was a case where the plaintiffs only ever sought nominal damages. There were no other money issues that were sought in the first instance. This is a different situation. Again, there were statutory damages sought, in addition to all the declaratory and injunctive relief, which I know the court has indicated that it may be appropriate to separately consider. But I think what's important, again, is going back to Farrar. And I would say that this court should independently establish its own rule and really look at Farrar. Farrar instructs, and what was important to Farrar, again, is whether or not it was a technical or de minimis in nature victory, such that the only reasonable fees are no fees at all. And one example of that that O'Connor gave was a situation in which a plaintiff sought much more than it actually achieved, and only achieved nominal damages. But Justice O'Connor specifically said that that was just an example of a case in which it was a technical victory. Here we have a situation where maybe the plaintiffs did not see quite the same amount of compensatory damages that the plaintiffs sought in Farrar, but their victory was no less de minimis. As far as the public goal, again, this was an as-applied challenge. Going to your honors question about the significance of what they achieved, the significance in this case, it was not a general free speech rights. It was not that the city prohibited every single person from saying anything. It was a victory that at one point in time they should have been allowed to use a bullhorn to amplify their speech at certain places in the city and at certain times. It's not free speech rights in general. And when you compare those to the other rights that have found to be significant in Farrar-type cases, you have the right to be free from illegal detention, the right to be free from excessive force, the right to be free from discrimination in public sports. The right to be free from excessive force is the abstract right. And then in the particular case, it was the right to be free from something in particular. So that's the same thing here. The abstract right is the right of free speech, and then there's the particularization. I don't see the difference. And again, I think this really goes back to it is different. And if you look at this court's decision in Mahatch-Watkins, it highlights the fact that in talking about the significance, and in that case it was the right to be free from wrongful death. And it talks about how death cases and use of force cases are much different than cases that don't involve those issues. And this is a case where we don't have those issues. Okay, you are over your time. Thank you. First I'd like to speak to the idea of the Bain Act. The Bain Act was a state claim. What is the Bain Act, by the way? It's in essence unlawful force, being arrested unlawfully. It wasn't about the First Amendment issue directly at all? No. Actually, the Bain Act, whether it went up or down, is irrelevant to the inquiry under 1988. 1988 is solely concerned with 1983's success by its very terms. It's in the first clause, I believe. I mean, there's other federal claims that it can apply to, but none that are germane here. And I must really reply to this. Counsel said, or at least her position was that this right was really not so significant. It was as applied only to Mr. Klein. Well, no, that's not quite accurate. Now the amplified political speech that was prohibited before is now all comers are welcome in Laguna Beach. And that's, to me, a pretty significant result. Okay, thank you very much.
judges: Gould, Berzon, Zouhary